UNITED STATES DISTRICT COURT                              O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CNH CAPITAL AMERICA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. M-10-478 |
| | § | |
| PROGRESO MATERIALS LTD, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Plaintiff CNH Capital America LLC's ("CNH") motion for partial summary judgment.[1]  After considering the motion, supplement to the motion, responses, reply, and surreply, the Court **GRANTS** the motion in part and **DENIES** it in part.

## I.    Background[2]

This dispute arises out of the financing and two sales of some equipment, an Ahern Asphalt Plant and a Kawasaki Wheel Loader s/n 85C55048.  CNH financed the purchase of both pieces of equipment.[3]

CNH contends that the original buyers were Hugo Martinez ("Martinez") and Progreso Materials, Ltd. ("Progreso").[4]  CNH contends that Progreso and Martinez granted a security interest to CNH which CNH properly perfected.[5]  CNH alleges that Fernando Vasquez ("Vasquez") and Martinez guaranteed performance under the security agreement.[6]

---

[1] Dkt. No. 36.
[2] On November 2, 2012, Progreso Materials LTD, Hugo Alberto Martinez, and Fernando Vasquez "incorporate[d] by reference, the arguments and evidence set forth in Defendant [Upper Valley]'s Response to CNH's Motion for Summary Judgment."  Dkt. No. 45 at ¶ 1.  Therefore, Upper Valley's admissions in its response are also admissions of Progreso Materials LTD, Hugo Alberto Martinez, and Fernando Vasquez.
[3] Dkt. No. 36-1 at p. 6.
[4] Dkt. No. 27 at ¶ 8; Dkt. No. 36 at p. 6.
[5] Dkt. No. 27 at ¶ 10-11.
[6] Dkt. No. 27 at ¶ 9.

In contrast, Upper Valley contends that Martinez was not a buyer of the loader.[7]  Upper Valley denies that CNH properly perfected a security interest in the equipment.[8]

Ultimately, the equipment was sold to Upper Valley Materials, LLC ("Upper Valley"). CNH argues that Upper Valley acquired the equipment from Progreso and/or Martinez and/or Vasquez.[9]  Upper Valley argues that it bought the equipment only from Progreso.[10]

CNH brought suit against Progreso, Martinez, Vasquez, and Upper Valley.[11]  CNH alleges that Progreso and Martinez have breached the security agreement and that Martinez and Vasquez have breached their guaranties of the security agreement.[12]  CNH seeks a declaration that Upper Valley's interest in the equipment is subordinate to CNH's security interest and CNH seeks to foreclose on the equipment.[13]  Lastly, CNH seeks to recover attorneys fees from all Defendants[14]

Upper Valley has cross-claimed against the other defendants asserting that if CNH recovers the equipment from Upper Valley, Upper Valley is entitled to damages for breach of warranty regarding the equipment.[15]  Additionally, Progreso and Martinez have filed a third-party complaint against San Jacinto Title Services of the Rio Grande Valley L.L.C.[16]

Currently, CNH is seeking partial summary judgment.  First, CNH seeking summary judgment on all of its claims against Progreso, Martinez, and Vasquez.[17]  CNH also asks the

---

[7] Dkt. No 43 at ¶ 2.
[8] Dkt. No. 43 at ¶ 10. (Although Upper Valley does a poor job of articulating this distinction, it appears that it is Upper Valley's position that Progreso did not *perfect* a security interest in the loader, and Martinez could not individually grant a security interest in the loader.).
[9] Dkt. No. 27 at ¶ 17.
[10] Dkt. No. 29 at ¶ 17.
[11] Dkt. No. 27.
[12] *Id*. at ¶¶ 19-22.
[13] *Id*. at ¶¶ 23-24.
[14] Dkt. No. 27 at ¶ 25.
[15] Dkt. No. 29 at ¶¶  37-43.
[16] Dkt. No. 60.
[17] Dkt. No. 36 at p. 1.

Court to find that it has a valid and perfected security interest in the loader that it may enforce against Upper Valley.[18]

## II.    Analysis

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] Federal Rule of Civil Procedure 56 states in part:

> (c) Procedures.  (1) Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[20]

Additionally, "[w]here federal jurisdiction is based on diversity of citizenship, as it is here, a federal court looks to the substantive law of the forum state."[21]

## A.    Claims Against Upper Valley

CNH argues that it has a perfected and enforceable security interest in the loader which entitles it to foreclose on the loader.  For simplicity, the Court will first analyze whether CNH has established that there was a security interest in the loader.  Second, if there was a security interest in the loader, the Court will then determine whether CNH has established that it perfected that security interest.  Third, if the Court determines that there was an unperfected security interest in the loader, the Court will evaluate if CNH may, nevertheless, enforce its unperfected security interest against Upper Valley.

---

[18] *Id.*.
[19] FED. R. CIV. P. 56(a).
[20] FED. R. CIV. P. 56(c).
[21] Colony Ins. Co. v. Peachtree Constr., Ltd., 647 F.3d 248, 252 (5th Cir. 2011) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Tex. Indus., Inc. v. Factory Mut. Ins. Co., 486 F.3d 844, 846 (5th Cir. 2007)).

1.      **Security Interest**

The Court will first determine whether there was a valid security interest in the loader.

Section 9.203 of the Texas Business and Commerce Code addresses the enforceability of

security interests:

> (a) A security interest attaches to collateral when it becomes enforceable against
> the debtor with respect to the collateral, unless an agreement expressly postpones
> the time of attachment.
> (b) Except as otherwise provided in Subsections (c)-(j), a security interest is
> enforceable against the debtor and third parties with respect to the collateral only
> if:
> > (1) value has been given;
> > (2) the debtor has rights in the collateral or the power to transfer rights in
> > the collateral to a secured party; and
> > (3) one of the following conditions is met:
> > > (A) the debtor has authenticated a security agreement that provides
> > > a description of the collateral . . . .[22]

Because the granting of a security interest requires that the "debtor [have] rights in the

collateral," the Court must determine who is "debtor" as to the loader.  In this context, a "debtor"

is "a person having an interest, other than a security interest or other lien, in the collateral,

whether or not the person is an obligor . . . ."[23]

Turning to the evidence provided by the parties, it is important to note that there are two

versions of the Retail Installment Sale Contract and related guaranties in the record.  CNH

provided a version which lists Progreso and Martinez in the "Buyer" field.[24]  Upper Valley

provided a version which lists Progreso and Vasquez in the "Buyer" field ("Vasquez

Agreement").[25]  None of the parties have suggested that some other agreement controls.  At this

stage, the Court need not decide which of the agreements controls.  It is undisputed that Progreso

---

[22] Tex. Bus. & Com. Code Ann. § 9.203 (West Supp. 2011).
[23] Tex. Bus. & Com. Code Ann. § 9.102(28)(A) (West Supp. 2011).
[24] Dkt. No. 36-1 at pp. 8-15.
[25] Dkt. No. 43-6 at pp. 2-9.

had rights in the collateral.  The critical issue is whether Martinez also had individual rights in the collateral.

For the reasons stated below, the Court finds that there is genuine issue of material fact about whether Martinez was a "debtor [who] ha[d] rights in the collateral or the power to transfer rights in the collateral to a secured party."  If CNH is correct that Martinez purchased the loader in his individual capacity, then this element would likely be satisfied.  On the other hand, the analysis changes if Martinez was only acting on behalf of Progreso, a partnership, because "[p]artnership property is not property of the partners" and "[a] partner . . . does not have an interest in partnership property."[26]  Therefore, even if Martinez was a partner, that status alone was insufficient to permit him to individually convey a security interest in partnership property.

The Court will now determine if the loader was partnership property.  The Texas Business Organization Code states the following general rule regarding property acquired in the partnership context:[27]

> (a) Property is partnership property if acquired in the name of:
>> (1) the partnership; or
>> (2) one or more partners, regardless of whether the name of the partnership is indicated, if the instrument transferring title to the property indicates:
>>> (A) the person's capacity as a partner; or
>>> (B) the existence of a partnership.
> * * *
> (d) For purposes of this section, property is acquired in the name of the partnership by a transfer to:
>> (1) the partnership in its name; or
>> (2) one or more partners in the partners' capacity as partners in the partnership, if the name of the partnership is indicated in the instrument transferring title to the property.[28]

---

[26] Tex. Bus. Orgs. Code Ann.  § 152.101 (West Supp. 2011).

[27] Unless the limited partnership chapter contradicts a provision of the general partnership chapter, the general partnership provisions apply. Tex. Bus. Orgs. Code Ann. § 153.003 (West. Supp. 2011).

[28] Tex. Bus. Orgs. Code Ann. § 152.102 (West Supp. 2011).

Because CNH, the summary judgment movant, relies on the Martinez Agreement in its argument, the Court will focus its analysis on that document.

On the first page of the Martinez Agreement, both Progreso and Martinez are listed in the "Buyer" field.[29]  Progreso is a partnership and under the partnership statute the loader is properly characterized as partnership property if the Martinez Agreement controls because Progreso acquired the loader in the name of the partnership.[30]

Aside from partnership law, the Court finds that there is genuine issue of material fact as to whether Martinez should be considered a "Buyer" under the Martinez Agreement.  Simply, the Martinez Agreement is laden with ambiguity.  Although Martinez is listed in the "Buyer" field, only the "Corporation/LLC/LP" was checked, and the "Individual/Sole Proprietorship" box was notably left unchecked.[31]  If, as CNH argues, Martinez was taking an individual interest in the loader, the "Individual/Sole Proprietorship" box should have been checked as well. Additionally, Martinez signed the first page as an "Owner."[32]  Also, on the top of each of the last five pages of the Martinez Agreement, only Progreso is identified as the buyer.[33]  These aspects of the Martinez Agreement are sufficient to render the contract ambiguous. This is important because   "[o]nly where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument."[34]

Furthermore, CNH has failed to demonstrate with extrinsic evidence that the parties intended Martinez to be a buyer under the Martinez Agreement.  Specifically, the Court finds

---

[29] Dkt. No. 36-1 at p. 8.
[30] Even though Progeso's name is misspelled in the both the Martinez Agreement and the Vasquez Agreement, the Court finds that both agreements indicate that Progreso acquired the loader "in the name of the partnership" *for the purposes of the partnership statute*.
[31] Dkt. No. 36-1 at p. 8.
[32] *Id*.
[33] Dkt. No. 36-1 at pp. 9-13.
[34] David J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450-51 (Tex. 2008) (internal quotation marks and citations omitted).

that the evidence cited by CNH does not support its position that Martinez understood he was "buyer" in the 2007 transaction.[35]  On the contrary, Martinez testified that he did not individually buy the loader.[36]

Additionally, the Court finds it telling that CNH's current position that Martinez was a "buyer" contradicts its own original assessment of this transaction.  Specifically, CNH filed an affidavit of Aaron Lachell, a CNH employee and a custodian of records, and in the affidavit Mr. Lachell identified "Progreso Material LTD" as the "Buyer" of the loader.[37]  Furthermore, the affidavit distinguished between Progreso, the "Buyer," and "Martinez."[38]  CNH also attached a demand letter which was sent by CNH's attorney to Martinez.[39]  In the demand letter, CNH's counsel identified Progreso as the "Buyer" and identified Martinez as a guarantor.[40]

Ultimately, the summary judgment record does not establish that Martinez had an individual interest in the loader which would make him a "debtor."   Because CNH has not established that Martinez was a "debtor," the Court cannot find that Martinez could individually grant a security interest in the loader.[41]

The parties agree that Progreso was a buyer of the loader.[42]  This is true even if the Vasquez Agreement, which Upper Valley attached to its response, controls.  Because Progreso had an interest in the loader, Progreso qualifies as a debtor.  Furthermore, under both the Martinez Agreement and the Vasquez Agreement, value was purportedly given,[43] and CNH

---

[35] Dkt. No. 42 at p. 5.
[36] Dkt. No. 43-3 at p. 11.
[37] Dkt. No. 36-1 at pp. 5-7. (This affidavit misspells Progreso's name.).
[38] *Id*.
[39] Dkt. No. 36-1 at pp. 24-25 (This letter misspells Progreso's name.).
[40] *Id*.
[41] The Court notes that the same outcome would likely result if Fernando Vasquez' interests in the loader were analyzed, but this analysis is unnecessary because CNH focuses its argument on Martinez.
[42] Dkt. No. 36 at p. 6; Dkt. No. 43 at ¶ 1; Dkt. No. 45.
[43] Dkt No. 36-1 at p. 8; Dkt. No. 43-6 at p. 2.

financed the purchase.[44]   Both agreements appear to be signed by Martinez and Vasquez, who Defendants admit are Progreso's principals,[45] as Progreso's "Owner[s]."[46]   Finally, the loader is identified in both agreements.[47]   Thus, under both agreements, Progreso granted a security interest in the loader. This is consistent with Defendants' position that "CNH took a security interest in the Loader in connection with the First Sale."[48]   Now the Court will consider whether the security interest that Progreso granted in the loader was perfected by CNH.

## 2.      Perfection

CNH argues that it successfully perfected its security interest in the loader by filing a UCC Financing Statement.[49]   CNH stated: "To be enforceable against third parties such as [Upper Valley], a security interest must be perfected by filing a UCC-1 financing statement with the Secretary of State."[50]   Because CNH does not argue that it perfected its security interest in any other way, the Court will only consider whether CNH perfected its security interest in the loader by filing the UCC-1 financing statement.  The Texas Business and Commerce Code states in relevant part:

> (a) A financing statement substantially satisfying the requirements of this subchapter is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.
> (b) Except as otherwise provided in Subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9.503(a) is seriously misleading.
> (c) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9.503(a), the name provided does not make the financing statement seriously misleading.[51]

---

[44] Dkt. No. 36-1 at p. 6.
[45] Dkt. No. 43 at ¶ 5 and Dkt. No. 45.
[46] Dkt. No. 36-1 at p. 8; Dkt. No. 43-6 at p. 2.
[47] *Id.*
[48] Dkt. No. 43 at ¶ 1; Dkt. No. 45.
[49] Dkt. No. 36 at p. 7; Dkt. No. 36-1 at pp. 32-33.
[50] Dkt. No. 36 at p. 6.
[51] Tex. Bus. & Com. Code Ann. § 9.506 (West Supp. 2011).

Here, the Court must consider whether the financing statement was seriously misleading. Upper Valley argues that the financing statement was seriously misleading because the "s" was left off the word "Materials" in Progreso's name,[52] and CNH does not argue that a search under Progreso's correct name would have disclosed the financing statement.[53]   Furthermore, the Court has reviewed the applicable portion of the Texas Administrative Code which establishes the standard search logic and is persuaded that the omission of the "s" would have prevented a searcher using the standard search logic from discovering the financing statement if the searcher used Progreso's correct name.[54]

For its part, CNH argues that the misspelling of Progreso's name is irrelevant because a search under Martinez' name would have revealed the financing statement on which Progreso was also listed as a debtor.[55]   A financing statement is seriously misleading if a search of the records "under the *debtor's* correct name" would not disclose the financing statement.  But, as discussed above, CNH has failed to demonstrate that Martinez was a debtor.  If Martinez was not a debtor, the fact that a search in his name would have revealed the financing statement was insufficient to perfect CNH's security interest in the loader.

Because CNH misspelled Progreso's name and because CNH has not demonstrated that Martinez was a "debtor" whose name Upper Valley  should have searched for under § 9.506, the Court finds that CNH has failed to demonstrate that it perfected its security interest in the loader.

**3.      Without Knowledge**

Although CNH has failed to demonstrate that it had a perfected security interest in the loader, the Court's analysis is not complete.  Section 9.201 of the Business and Commerce Code

---

[52] Dkt. No. 43 at ¶ 10 & n.2.
[53] Dkt. No. 36 at pp. 7-11.
[54] 1 Tex. Admin. Code § 95.503 (Tex. Sec'y of State); *see In re* Jim Ross Tires, Inc., 379 B.R. 670 (S.D. Tex. 2007).
[55] Dkt. No. 36 at pp. 10-11.

states the general rule regarding the effectiveness of a security agreement:  "Except as otherwise provided by this title, a security agreement is effective according to its terms between the parties, **against purchasers of collateral**, and against creditors."[56]   Therefore, except as otherwise provided, CNH's security agreement covering the loader is effective against Upper Valley even if it was not perfected.

Section 9.317 provides the relevant exception:

> Except as otherwise provided in Subsection (e), **a buyer**, other than a secured party, of tangible chattel paper, tangible documents, goods, instruments, or a security certificate **takes free of a security interest** or agricultural lien **if the buyer gives value and receives delivery of the collateral without knowledge of the security interest** or agricultural lien **and before it is perfected**.[57]

Here, CNH argues that Upper Valley should be deemed to have knowledge of CNH's security interest because Martinez was listed as a seller on the documents when Upper Valley acquired the loader.[58]  Upper Valley states that it did not have knowledge of the lien.[59]

In this context, "knowledge" means actual knowledge.[60]  But CNH has not demonstrated that Upper Valley had actual knowledge of the lien.  Instead, CNH argues that Upper Valley *should have discovered* the security interest;[61] that is not an actual knowledge argument. Additionally, CNH's argument that Lone Star National Bank ("LSNB") actually discovered the security interest[62] is unavailing because CNH produced no evidence that LSNB communicated that knowledge to Upper Valley.  Therefore, Upper Valley cannot be charged with LSNB's actual knowledge.  Ultimately, CNH has failed to demonstrate that Upper Valley had actual

---

[56] Tex. Bus. & Com. Code Ann. § 9.201(a) (West. Supp. 2011) (emphasis added).
[57] Tex. Bus. & Com. Code Ann. § 9.317(b) (West Supp. 2011) (emphasis added).
[58] Dkt. No. 36 at p. 7-11; Dkt. No. 42.
[59] Dkt. No. 43 at ¶ 2.
[60] Tex. Bus. & Com. Code Ann. § 1.202(b) (West Supp. 2011) (emphasis added).
[61] Dkt. No. 36 at pp. 7-11.
[62] Dkt. No. 42 at pp. 2-4.

knowledge of the security interest.  Thus, § 9.317 prevents the Court from entering summary judgment in favor of CNH on this issue at this time.

In conclusion, Court **GRANTS** summary judgment in part and **DENIES** summary judgment in part on CNH's claims against Upper Valley.  Specifically, the Court finds that Progreso granted a security interest in the loader and grants summary judgment for CNH on that issue.  The Court denies summary judgment on the other issues.  The summary judgment record does not demonstrate that Martinez individually granted a security interest in the loader. Furthermore, CNH has failed to demonstrate that it perfected its security interest in the loader. Although CNH might prevail if Upper Valley had actual knowledge of the lien, there is a genuine issue of material fact regarding whether Upper Valley had actual knowledge of the lien. Because CNH has not demonstrated that it perfected a security interest in the loader or that Upper Valley had actual knowledge of the security interest, CNH may not foreclose on the loader at this time.

**B.      Claims Against Progreso, Martinez, and Vasquez**

CNH moves for summary judgment on all of its claims against Progreso, Martinez, Vasquez.[63]  The Court will first consider the underlying liability issues before addressing the amount of any such liability.

**1.      Breach of Contract Claims**

CNH moves for summary judgment on its breach of agreement claim against Progreso and Martinez.[64]  This is a breach of contract claim.   "The elements in a suit for breach of

---

[63] Dkt. No. 36 at p 1.
[64] Dkt. No. 27 at ¶¶ 19-20.

contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach."[65]

First, the Court considers whether there was a valid contract.  CNH bases its breach of contract claim on the "Martinez Agreement,"[66] which was provided by CNH's custodian of records.[67]  The agreement appears to be valid contract, and Progreso and Martinez do no dispute that there was a valid contract.  At most, the parties dispute whether the Martinez Agreement or the Vasquez Agreement is the controlling agreement.  But here, the issue of which agreement controls is irrelevant as far as Progreso is concerned because Progreso would be bound under either agreement.  In contrast, as explained above, the Martinez Agreement is ambiguous; CNH relies on the Martinez Agreement, but has failed to establish that Martinez signed the non-guaranty portion of the Martinez Agreement in his individual capacity and not merely as a representative of Progreso.  Therefore, the Court finds that CNH has demonstrated that there was a valid contract with Progreso, but has not demonstrated that there was a valid contract with Martinez individually (beyond the guaranty portion of the Martinez Agreement).

Second, the Court turns to the performance element. The summary judgment record establishes that CNH performed by financing the purchase of the loader.[68]  Defendants do not dispute that CNH performed.

Third, the Court considers whether there was a breach. CNH provides evidence that Progreso has failed to make timely payments under the agreement.[69]  The Court finds that this constitutes a breach by Progeso.

---

[65] Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc., 48 S.W.3d 225, 235 (Tex. App.—San Antonio 2001, pet. denied) (citation omitted).
[66] Dkt. No. 36-1 at pp 8-13.
[67] Dkt. No. 36-1 at pp. 5-7.
[68] Dkt. No. 36-1 at pp. 5-6.
[69] Dkt. No. 36-1 at p. 6.

Fourth, the Court considers the damages element.  Here, the summary judgment evidence establishes that CNH has been damaged by Progreso's breach because CNH has not been paid and not recovered the equipment.[70]

Ultimately, the Court **GRANTS** summary judgment for CNH on its breach of contract claim against Progreso.  The Court **DENIES** summary judgment for CNH on its breach of contract claim against Martinez because CNH has not demonstrated that Martinez was individually a party to the non-guaranty portion of the Martinez Agreement.

**2.       Breach of Guaranty Claims**

The Court will now address CNH's claims that Martinez and Vasquez breached their guaranties.  "[I]n order to recover on a breach of guaranty agreement, the plaintiff must prove: (1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor."[71]

First, CNH has produced evidence of two guaranties of payment under the Martinez Agreement which were apparently executed by Martinez and Vasquez.[72]  Upper Valley produced the Vasquez Agreement which contains guaranties that Martinez and Vasquez apparently executed as well.[73]  Furthermore, Martinez admitted that he and Vasquez guaranteed the agreement.[74]  The Court finds that Martinez and Vasquez were guarantors.  Additionally, the evidence establishes that CNH is the owner of those guaranties via assignment of the underlying agreements.[75]  Second, as to the terms of the underlying agreements, both the Martinez

---

[70] Dkt. No. 36-1 at pp. 6-7.
[71] Byrd v. Estate of Nelms, 154 S.W.3d 149, 157 (Tex. App.—Waco 2004, pet. denied).
[72] Dkt. No. 36-1 at pp. 6, 9, 14-15.
[73] Dkt. No. 43-6 at pp. 3, 8-9.
[74] Dkt. No. 43-3 at p. 63.
[75] Dkt. No. 36-1 at p. 12; Dkt. No. 43-6 at p. 6.

Agreement and the Vasquez Agreements required payments to be made.[76]   Third, the condition upon which liability is based has occurred because Progreso has failed to make timely payments under the agreement.[77]   Fourth, the summary judgment evidence establishes that Martinez and Vasquez have failed to perform their promises because further payments have not been made.[78]

Therefore, the Court finds that Martinez and Vasquez have breached their guaranties. The Court **GRANTS** summary judgment for CNH and against Martinez and Vasquez on the breach of guaranty claims.

### 3.    Amount Owed on Breach of Contract and Breach of Guaranty Claims

Because the Court has determined that Progreso is liable on the breach of contract claim and Martinez and Vasquez are liable on the breach of guaranty claims, the Court will now determine the amount owed.   Here, the summary judgment evidence establishes that Progreso owed $711,179.52 to CNH as of October 13, 2010.[79]   Additionally, Progreso owes a per diem of $151.64 for each day that amount has been unpaid.[80]

Furthermore, as guarantors, Martinez and Vasquez are jointly and severally for the same $711,179.52.   They are also jointly and severally liable for the $151.64 per diem for each day that amount is not paid.

The Court notes that CNH purports to respond to an allegation of misapplied payments.[81] After reviewing Upper Valley's response, which was adopted by the other defendants, this issue was only mentioned in passing, and when raised, only one page of Martinez' deposition was

---

[76] Dkt. No. 36-1 at pp. 8-13; Dkt. No. 43-6 at pp. 2-7.
[77] Dkt. No. 36-1 at p. 6.
[78] Dkt. No. 36-1 at p. 6.
[79] Dkt. No. 36-1 at p 6.
[80] Dkt. No. 36-1 at p. 6.
[81] Dkt. No. 46 at pp. 3-4.

cited.[82]   Nevertheless, the Court agrees with CNH that that single page of Martinez' deposition[83] does not create a genuine issue of material fact regarding the application of payments. Additionally, Defendants admit that Progreso requested that the proceeds from the sale be applied to other debts.[84]   Ultimately, the Court finds that Defendants have failed to demonstrate that there is a genuine issue of material fact regarding the application of payments by CNH that prevents the Court from entering judgment.

---

[82] Dkt. No. 43 at ¶¶ 7, 10.3 & 12.
[83] Dkt. No. 43-3 at p. 14.
[84] Dkt. No. 43 at ¶ 7; Dkt. No. 45.

III.     **Conclusion**

In conclusion, the Court **GRANTS** summary judgment for CNH on the claim that a security interest in the loader was granted by Progreso.  The Court **DENIES** summary judgment on the remaining issues related to CNH's attempt to recover the loader from Upper Valley.

Furthermore, the Court **GRANTS** summary judgment for CNH and against Progreso on the breach of contract claim.  The Court **DENIES** summary judgment on the breach of contract claim against Martinez.  The Court **GRANTS** summary judgment for CNH and against Martinez and Vasquez on the breach of guaranty claims.

Accordingly, the Court enters judgment against Progreso, Martinez and Vasquez, and finds that they are jointly and severally liable to CNH for the following sums:

(1) Seven hundred eleven thousand one hundred seventy-nine and 52/100 dollars ($711,179.52); and

(2) Accrued pre-judgment interest in the amount of $151.64 (the "Per Diem") for each day from and after October 13, 2010 through the date of Final Judgment.

IT IS SO ORDERED.

DONE this 25th day of October, 2012, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE